R. Samuel Paz (SBN 62373)
**Law Offices of R. Samuel Paz**
5711 W. Slauson, Suite 100
Culver City, California 90230
Telephone: (310) 410-2981
E-mail: samuelpaz@msn.com

John Burton (SBN 86029)
**The Law Offices of John Burton**
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 449-8300
Email: jb@johnburtonlaw.com

Attorneys for Plaintiff JUAN MANUEL BRICENO, Individually
And as Successor in Interest.

Sonia M. Mercado (SBN 117069)
**Sonia Mercado & Associates**
5711 W. Slauson, Suite 100
Culver City, California 90230
Telephone: (310) 210-4445
E-mail: soniamer2002@yahoo.com

Attorneys for Plaintiff the ESTATE OF ERIC ESTEBAN
BRICENO, Deceased, Through His Successor In Interest Blanca Luisa Briceno
and BLANCA LUISA BRICENO Individually And As Successor In Interest.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ESTATE OF ERIC ESTEBAN BRICENO, Deceased, through his successor in interest Blanca Luisa Briceno and BLANCA LUISA BRICENO individually and a successor in interest; and JUAN MANUEL BRICENO, Individually and as Successor in Interest, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ALEX VILLANUEVA, And DOES 1 To 10, <br><br> Defendants. | Case No. <br><br> Assigned to Hon. <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. Violation of Civil Rights (Excessive Force, Unlawful Entry and False Arrest) 42 U.S.C. § 1983; <br> 2. Violation of Substantive Due Process; <br> 3. Failure to Train and Supervise Causing Constitutional Violations; <br> 4. Policy, Pattern, or Practice Causing Constitutional Violations; <br> 5. Title II of the Americans with |

Disabilities Act (42 U.S.C. §§ 12131 et. seq.);
6. § 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et. seq.);
7. Cal. Const., Art. 1, § 7; Cal. Civil Code §§ 51, 51.7, 52, 52.1, 54, 54.1 and 54.3; and Cal. Gov't Code § 11135;
8. Assault and Battery;
9. False Arrest and Imprisonment;
10. Negligence.

**DEMAND FOR JURY TRIAL**

Plaintiffs are the ESTATE OF ERIC ESTEBAN BRICENO, Deceased, through his successor in interest Blanca Luisa Briceno; BLANCA LUISA BRICENO Individually and as Successor in Interest; and JUAN MANUEL BRICENO, Individually and as Successor in Interest, by and through their respective attorneys, they jointly complain against Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ALEX VILLANUEVA and DOES 1-10, and allege as follows:

## JURISDICTION AND VENUE

1. This is a civil rights injury and wrongful death/survival action brought to redress alleged deprivations of constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§1983, 1985 and 1988 and for violations of the Americans With Disabilities Act (ADA). Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a) (3) and (4), and the aforementioned statutory and constitutional provisions.

2. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide their claims arising under state law that form part of the same case and controversy, including the California Constitution, Civil Code and Government Tort Claims Act.

3. On August 28, 2020 and September 24, 2020, Plaintiffs timely filed Claims and

Amendments for damages against COUNTY OF LOS ANGELES ("COUNTY") pursuant to the applicable sections of the California Government Code.   On October 8, 2020, COUNTY rejected both the Claim and Amendment. This Complaint is timely filed.

4. Venue over Plaintiffs' claims is proper in the Central District of California because one or more of the Defendants' principal place of business is in the County of Los Angeles, and the events giving rise to the claim occurred in this District.   28 U.S.C. § 1391(a) (1) and (b) (2).

## PARTIES

5. Decedent ERIC ESTEBAN BRICENO was born on October 16, 1980.  Plaintiffs BLANCA LUISA BRICENO and JUAN MANUEL BRICENO are his natural parents and successors in interest pursuant to Cal. Civ. Proc. Code § 377. Concurrent with the filing of this Complaint, BLANCA LUISA BRICENO and JUAN MANUEL BRICENO each files her and his respective "Declaration of Successor in Interest Pursuant to Cal. Civ. Code §§ 377.20 and 377.60, et seq."

6. The ESTATE OF ERIC ESTEBAN BRICENO is represented by BLANCA LUISA BRICENO, as set forth in her "Declaration of Successor in Interest Pursuant to Cal. Civ. Code §§ 377.20 and 377.60, et seq."   Eric, who was mentally disabled, lived with his parents in the City of Maywood, California.   He died at age 39.

7. Defendant COUNTY is a chartered subdivision of the State of California with the capacity to sue and to be sued.   Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Defendant LOS ANGELES SHERIFF DEPARTMENT (hereinafter referred to as "LASD") and its agents and employees.   At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the LASD and its employees complied with the laws and the Constitutions of the United States and of the State of California.

8. Defendant SHERIFF ALEX VILLANUEVA (hereinafter referred to as "VILLANUEVA") is sued in his individual capacity.  VILLANUEVA is the decision maker for the LASD. VILLANUEVA is charged by law with the administration of defendant LASD's patrol deputies and for the supervision, training, re-training and hiring of persons working within the LASD, including deputy sheriffs and specifically including Defendants Does 1-10, inclusive, each of whom is sued in his/her individual capacity.   Each was a duly authorized employee and agent of COUNTY and LASD, who was acting under color of law within the course and scope of his/her duties as a deputy sheriff and supervisor and with the complete authority and ratification of his/her principals, Defendant COUNTY, LASD and VILLANUEVA.

9.  Plaintiffs are informed and believe, and thereon allege that there are more than 10 Doe defendants responsible for the injuries to Decedent and to Plaintiffs as alleged below.  Plaintiffs have exercised due diligence to learn the names of Doe Defendants, including serving a California Public Records Act request on COUNTY, LASD and VILLANUEVA, to which these Defendants responded on June 2, 2020, with a blanket denial of the request.  Plaintiffs would allege more than 10 Does, but C.D. Cal. R. 19-1 precludes them from doing so. Plaintiffs will use their best efforts to obtain the identities of the unnamed defendants from the named Defendants and amend as soon as possible.  As used in this Complaint, "Does 1 to 10" refers to all unnamed defendants responsible or liable for some reason for the injuries to ERIC ESTEBAN BRICENO and Plaintiffs, a number which Plaintiffs are informed and believe is greater than 10.

10. Each of these Defendants and Doe Defendants caused and is responsible for the unlawful conduct and resulting injuries by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so: by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct

occurred; by failing and refusing, with deliberate indifference to the rights of Plaintiffs BLANCA LUISA BRICENO (hereinafter "BLANCA BRICENO or Blanca") and JUAN MANUEL BRICENO (hereinafter "JUAN BRICENO or Juan"), and those of Decedent ERIC ESTEBAN BRICENO (hereinafter "ERIC BRICENO or Eric"), to initiate and maintain adequate supervision and/or training; and by ratifying the unlawful conduct that occurred by Defendants DOES 1-10, inclusive, agents and deputy sheriffs under their direction and control.

11. Whenever and wherever reference is made in this Complaint to any act by a defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each defendant individually, jointly and severally.   They are sued in their individual and official capacities, and in some manner are responsible for the acts and omissions alleged herein.   Plaintiffs will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained.   Each Doe Defendant is the agent of the other defendants.

**PRELIMINARY ALLEGATIONS**

12. This action is brought under Title 42 U.S.C. § 1983, 1988 based on deprivations of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, the ADA and related statutes, the general laws of this State, the California Constitution Article I § 13, and the California Government Tort Claims Act.   Plaintiffs allege that the conduct of the Defendants and Doe Defendants caused the wrongful death of their son ERIC BRICENO, resulting in pain and suffering and the deprivation of his right to life, and deprived Plaintiffs BLANCA BRICENO and JUAN BRICENO individually of their right to a familial relationship with ERIC BRICENO.   Plaintiffs BLANCA BRICENO and JUAN BRICENO were individually deprived of their constitutionally protected rights to be free from false arrest and imprisonment caused by the Defendants' and DOE Defendants' wrongful conduct.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

13.  BLANCA BRICENO and JUAN BRICENO are the parents of mentally-ill Eric Esteban Briceno, who was killed at age 39 by LASD deputies in the family home, located in Maywood, California. The Bricenos were a close, stable, loving family. At some point during high school Eric began displaying symptoms of mental illness and was ultimately diagnosed with mild schizophrenia. Due to his mental disability, Eric received mental health care and treatment as well as SSI payments that were administered for his benefit by his mother Blanca.   The parents did their best to obtain appropriate treatment for their son, who continued to reside in the Maywood home, where the family had resided for 40 years.   Plaintiffs are informed and believe that at times over the years Eric may have self-medicated to some extent with street drugs, but drug use and possession was not allowed in their home.

14.  Eric had a reputation in his community for being friendly and helpful.   He possessed a good sense of humor and above average intelligence.   He was never a threat to harm himself or others, although due to his mental illness there were a few incidents involving physical altercations with his father Juan.   The family understood these incidents were manifestation of Eric's mental-health disability and also played a part in their frustration at not being able to obtain the continued mental health care and treatment indicated for Eric.

15.  After an incident that resulted in an incarceration followed by probation, the court assisted in Eric obtaining regular mental health services through the County Department of Mental Health, assisted by Telecare, a contractor for Los Angeles County. Mental health professionals followed Eric's case and proscribed medications, including a monthly injection administered by a nurse. Plaintiffs insured Eric took his daily oral medications. Like many, however, Eric experienced unpleasant side effects, including frustration and drowsiness.

**The Parents' Call for Help.**

16.  Mid-morning on March 16, 2020, Eric had a mental health relapse, which was

manifested with frustration and resulted in a brief, minor altercation with his father. No one was injured. Eric left the home. Following instructions of County mental health providers, the parents called 911 for mental-health help for Eric.

17. Deputy Sheriffs rather than mental health professionals responded, including a uniformed female deputy who seemed to be taking the lead. The parents explained that Eric was on probation and asked about a rehabilitation program through court proceedings. The female deputy appeared agitated. "Why is he here? You should throw him in the street," she told the parents. Blanca Briceno patiently explained that Eric was her son and lived in their home, and that she had called because they wanted him to be helped. Juan Briceno inquired if the deputies were going to wait for Eric to return. A deputy stated, "No, why don't you throw him out to the street, we have other things to do." Nevertheless, as they were leaving the deputies instructed the parents to call when Eric returned home.

18. Juan Briceno called a social worker, explaining that he had called 911 to see if they would help get court ordered rehabilitation and placement for Eric. The social worker agreed that Eric needed in-patient treatment and explained that Eric could get court mandated rehabilitation through the jail system.

19. After Eric returned home mid-afternoon, Juan called 911, following the recommendation of the social worker and as instructed by the deputies. Asked whether Eric was armed or being violent, Juan answered "no" to both questions. Blanca met several deputies at the front door, including the female who had been there earlier. Blanca said she did not want deputies in the house and did not want them to go into Eric's room. She told them that she would bring Eric outside to them, assuring the deputies that he always obeyed her. One deputy said to another, "This is Eric Briceno," a second deputy added, "good guy."

**Doe Deputies' Warrantless Entry, Search and Killing of Eric Briceno.**

20. The deputies insisted, "We're going in" and they brushed Blanca aside as they all walked into the home. Blanca followed the group of deputies to Eric's small

bedroom, where he was lying face down on his bed apparently sleeping.   The deputies entered his bedroom without knocking or announcing themselves.

21.   Eric, was startled, stood up and said "What, what?"   He looked frightened. He extended his hands at waist level away from his body, with open palms, fingers spread apart.   He said "Mom, they're going to kill me with that Taser!"   Blanca looked at the female deputy and saw a Taser pointed at Eric.   Blanca kept talking, trying to calm Eric.   The female deputy yelled at Blanca, "Get out of here!"   Blanca responded, "No I'm not moving, I don't want anything to happen." Blanca repeated, "I'm not moving," and "I don't want anything to happen."

22.   Blanca was pushed out of the bedroom. Without justification the deputies beat and tasered Eric.   Blanca returned to the bedroom door where she saw several male deputies on top of Eric, either kneeling on his back or hitting him with batons as the female deputy tasered him.   Eric, in a muffled voice repeated, "I can't breathe, I can't breathe."   A deputy discharged pepper spray in the room, which caused everyone to cough.   Blanca kept yelling, "Don't hit him!" and cried out, "Why are you hitting him?"   "Stop hitting him."   "Don't hit him anymore."   She called out to Juan, "Me Lo están matando!"   ("They're killing him!")   A Doe Deputy Defendant pushed Blanca into a cabinet, breaking the cabinet door and physically injuring her arm and leg.

**False Arrest and False Imprisonment of Juan Briceno.**

23.   Another deputy ordered Juan to go outside.   Juan watched multiple deputies coming in and out of their home as a helicopter circled overhead.   Doe Defendant Deputies then, without explanation, detained Juan and ordered him into the back seat of a police car, although he had committed no crime.

24. Blanca remained in the house, where she watched as deputies dragged her motionless son Eric out of the bedroom into a vestibule by the living room.   Los Angeles Fire Department paramedics reached Eric about 4:00 p.m.   According to their EMS report, Eric was "face down with handcuffs, blue face with swelling and

bruising to right eye." Eric had been "tased several times by LASD, also pepper sprayed."  The deputies did not initiate CPR although Eric had no pulse and was not breathing. His heart rhythm was "PEA," a symptom of asphyxiation.  The paramedics initiated CPR, at one point generating enough electrical activity to warrant two defibrillation shocks, but they could not restore his spontaneous rhythm.  The paramedics attributed the cardiac arrest to "trauma."

**The Handcuffing, False Arrest and False Imprisonment of Blanca Briceno.**

25.  Blanca overheard a paramedic shout, "There's no pulse!" She screamed, "Eric, please wake up, please wake up!" Then she shouted, "He's dead!"  Anguished and shocked, Blanca ran outside looking for her husband Juan. There were many deputies and other people in her front yard.  She finally found Juan locked inside one of the many patrol cars. A deputy ordered her, "You cannot talk or get near him.  Just get away!"  Blanca pleaded, "He needs to go inside and see his son; he's dead!" Juan, from inside the car said, "I need to be with my son."  The deputy responded, "No you can't."

26.  A Doe Defendant Deputy seized and handcuffed Blanca and locked her in a different patrol car, telling her, "You have to get out of here."  She implored the deputy, "Please let me out! Please let me out!" The deputy refused.  Blanca and Juan watched helplessly as Eric's lifeless body was taken out of their home and loaded onto an ambulance.  As a paramedic passed by her window, Blanca asked him, "How's Eric?" The paramedic stopped and said, "His heart stopped. We're going to take him to the hospital and give him CPR."  Blanca asked a deputy for her mobile phone.  He told her "No. You cannot speak to anyone."  She was barefoot, but not allowed to get her shoes.  Blanca and Juan were transported by separate L.A. Sheriff cars to the LASD Station and isolated.

27.  Eric was taken to the emergency room at Saint Frances Medical Center. According to the medical chart, the LASD reported Eric was tasered seven times.  Eric had "moderate head trauma with asymmetric pupils." Eric was pronounced dead at

4:55 p.m., within seven minutes of his arrival at the hospital. The preliminary diagnosis included "taser associated medical arrest," along with possible head trauma and substance abuse.  At 5:45 p.m., the emergency room staff informed Eric's older brother John of the death, telling him that Eric had been tasered and beaten to death. Eric's parents, Blanca and Juan, were not present because they were still under arrest by the LASD.

**The Excessive Use Of Force Is Documented In The Autopsy.**

28. Eric Briceno suffered a horrific beating, strangulation and multiple blister producing Taser discharges, summarized in the first pages of the autopsy report. The medical examiner found multiple blunt force injuries:

> (A) Blunt Head and Neck trauma: lacerations to the right eye, lacerations to the bridge of the nose, contusion to the right eye and contusions to the left forehead; (B) Subcutaneous hemorrhage to the right frontal, right parietal, right occipital, left parietal and left occipital scalp; (C) Fractures to the left hyoid bone; (D) Hemorrhage to the left thyroid cartilage: petechial hemorrhages, bilateral conjunctivae; (E) Lacerations to the upper and lower lips; (F) Contusions to the left hand, ankle, right lower leg; (G) Multiple contusions of the back; and, (H) Abrasions of the right wrist. (Autopsy, p. 1.)

29. The Medical Examiner also found injuries caused by "conductive energy devices" (albeit, Taser) consisting of (A) multiple abrasions and pale blister like lesions of the back; and (B) punctures on the right flank. These injuries are partially described as follows:

> On the left upper back, there are eight separate 1/8-inch round-to-oval, pale, blistered lesions with surrounding contusions; on the right upper back are a set of four 1/8-inch pale blistered oval lesions arranged in a square pattern, approximately 1 inch apart.  Examination of the mid lower back reveals another set of four 1/8-inch pale blistered oval lesions also one inch apart. Examination of the right and left buttocks reveal four separate 1/4-inch lineal pale-red abrasions arranged in a square or diamond like pattern.   (Autopsy, pp. 2-4.)

**The Continued False Arrest and Detention of Blanca and Juan**

Briceno.

30. For about five hours Blanca and Juan remained under arrest and in custody at the LASD's East Los Angeles substation.  During this time they implored deputies that they needed to go to the hospital and to talk to each other.  They were not allowed to speak to each other, Blanca was not provided access to needed and requested medical care; they could not leave or contact anybody, including their other children.  Blanca experienced symptoms of hypertension and complained that she was sick and suffering from high blood pressure and asked to leave to go to the hospital.  She pleaded with the deputies "I'm sick; I'm feeling sick and I want to leave."

**The Excessive Warrantless Search of the Briceno Home, Property and Vehicle.**

31. Many hours later, Blanca and Juan were finally released from custody, in shock and distressed beyond words by the events of the day.  At their home they were further shocked to be denied entry because Defendants and their superiors were searching their home without a warrant. After falsely arresting and imprisoning Blanca and Juan Briceno, Doe Defendant deputies and their superiors remained behind at the Briceno home, ransacking their personal property, tearing a bed mattress open, searching drawers and rooms throughout the house, including ransacking Eric's vehicle and interfering with the Briceno's tenants' private living quarters located behind their house.

**FIRST CLAIM**
**Excessive Force, Denial of Medical Care, False Arrest and Detention**
**Warrantless Entry into Home, and Excessive Warrantless**
**Search of the Briceno Home, Vehicle and Property**
**(42 U.S.C. § 1983 against Does 1-10)**

32. Plaintiffs refer to all paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

33. As set forth above, Plaintiffs and Decedent were subjected to deprivation of rights

by Defendants and Does 1-10 acting under color of state law including, but are not limited to, rights, privileges and immunities secured to Plaintiffs and Decedent by the Constitution and laws of the United States, and particularly:

a.  The rights of THE ESTATE OF ERIC ESTEBAN BRICENO to be free from excessive force; the right to timely medical treatment; the right to be free from the reckless disregard of his serious medical and mental health needs, and to be free from objective and subjective deliberate indifference, all of which caused Decedent great bodily harm, physical and emotional pain and suffering and death in violation of his rights protected under the Fourth and Fourteenth Amendments.  The rights of ERIC BRICENO to be free from a warrantless entry, search and seizure in violation of his rights protected under the Fourth Amendment.

b.  The rights of BLANCA BRICENO to be free from excessive warrantless entry, search and seizure and destruction of her home, property and vehicle in violation of her rights protected under the Fourth Amendment; her right to be free from excessive use of force; her right to be free from false arrest and false imprisonment; BLANCA BRICENO's right to be free from the objective and subjective deliberate indifference to her serious but treatable medical condition and injuries and her need to access to medical care in violation of her rights protected by the Fourteenth Amendment.

c.  The rights of JUAN BRICENO to be free from an excessive warrantless search of his home, property and vehicle in violation of his rights protected under the Fourth Amendment; his right to be free from excessive use of force; his right to be free from false arrest and false imprisonment, in violation of his rights protected by the Fourteenth Amendment.

34. As a result of Doe Defendants' wrongful conduct, they caused and are liable for the injuries and losses suffered by ERIC BRICENO, BLANCA BRICENO and JUAN BRICENO, either because they were integral participants in the wrongful conduct or because they failed to intervene to prevent these violations by integral

participants.   As such they are a legal cause and are liable for Plaintiffs' damages for costs of ambulance, hospital care and funeral and burial costs as allowable pursuant to federal law in an amount according to proof; along with general damages for pain and suffering, severe emotional distress and the loss of companionship and other wrongful death damages.

35. By virtue of the provisions of 42 U.S.C. § Section 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses according to proof.

36. The conduct of Defendants and Does 1-10 were willful, wanton and malicious with reckless disregard to the constitutional rights and safety of ERIC BRICENO, BLANCA BRICENO and JUAN BRICENO. Accordingly, punitive and exemplary damages under federal standards should be assessed against these Defendants.

**SECOND CLAIM**
**FOR VIOLATION OF SUBSTANTIVE DUE PROCESS**
**(42 U.S.C. § 1983 against all Defendants and Doe Defendants)**

37. Plaintiffs refer all paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

38. Plaintiffs BLANCA BRICENO and JUAN BRICENO, as the parents of Decedent ERIC BRICENO, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them life, liberty, or property in such a manner as to shock the conscience by being deliberately indifferent to their constitutional rights and those of ERIC BRICENO and/or by acting with a purpose to harm unrelated to any legitimate law enforcement objective, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with their son, Decedent ERIC BRICENO.

39. Decedent ERIC BRICENO had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that would deprive him of life, liberty, or property in such a manner as to shock the conscience by being deliberately indifferent to the constitutional

rights of the DECEDENT and/or by using deadly force after time to deliberate with a purpose to harm unrelated to any legitimate law enforcement objective.

40. Cal. Civ. Proc. Code § 377.30 provides that a cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to provisions in the Probate Code, and may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.

41. The Estate of ERIC BRICENO and both successors in interest bring this action as a survival action and claim that the wrongful conduct of each defendant caused ERIC BRICENO's pain and suffering prior to his death and for loss of ERIC BRICENO's enjoyment of life's activities.

42. The aforementioned actions of Defendants and Does 1-10, inclusive, along with other undiscovered conduct, violated the Due Process Clause of the Fourteenth Amendment, shocked the conscience, and interfered with the familial relationship of DECEDENT and Plaintiffs in violation of 42 U.S.C. Section 1983 in violation of the constitutional rights of DECEDENT and Plaintiffs.

43. As a direct and proximate result of the actions of Defendants and Does 1-10, Plaintiffs BLANCA BRICENO and JUAN BRICENO suffered the loss of their beloved son, ERIC BRICENO, including damages for the loss of his love, relationship, companionship, comfort, care, assistance, protection, affection, society, moral support; loss of gifts and benefits; and hospital, funeral and burial expenses.

44. As a direct and proximate result of the actions of Defendants and Does 1-10, Plaintiffs BLANCA BRICENO, on behalf of the ESTATE OF ERIC ESTEBAN BRICENO, and jointly with JUAN BRICENO as his successors in interest, also claim as damages the loss of the value and enjoyment of the life of ERIC BRICENO to himself in that his life was cut short by Defendants.   ERIC BRICENO was an otherwise physically healthy 39-year-old man who had approximately 32 years of remaining life expectancy at the time of his death.

Plaintiffs BLANCA BRICENO and JUAN BRICENO by this action, further claim all of Plaintiffs' attorneys' fees and costs incurred and to be incurred in Plaintiffs presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

45. The conduct of Defendants and Does 1-10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Does 1-10, inclusive.

**THIRD CLAIM**
**Supervisor Liability Causing Constitutional Violations**
**(Against Defendant VILLANUEVA and Does 1-10)**

46. Plaintiffs refer all paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

47. Plaintiffs are informed and believe and thereon allege that the acts and failures to act of Defendants VILLANUEVA and supervisor Does 1-10 deprived Plaintiffs and Decedent of their particular rights under the United States Constitution as alleged above in each of the following respects: (1) the supervisory defendants directed their subordinates in the acts and failures to act that deprived Plaintiffs and Decedent of these rights; (2) the supervisory defendants set in motion a series of acts by their subordinates, and knowingly refused to terminate a series of acts by their subordinates, that they knew or reasonably should have known would cause the subordinates to deprive Plaintiffs and Decedent of these rights. The supervisory defendants knew that their subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Plaintiffs and Decedent of these rights; and the supervisory defendants failed to act to prevent their subordinates from engaging in such conduct. The supervisory defendants disregarded the known or obvious consequences that their particular training deficiencies and omissions would cause their subordinates to violate Plaintiffs' and Decedent's constitutional rights; and those deficiencies and omissions actually caused their subordinates to deprive Plaintiffs and Decedent of

their constitutional rights. The supervisory defendant engaged in conduct that showed a reckless or callous indifference to the deprivation by their subordinates of the rights of others, and the supervisory defendants' conduct was so closely related to the deprivation of Decedent's and Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Decedent and to Plaintiffs.

48.   The supervisory defendants knew, or in the exercise of reasonable care, should have known of the history, propensity, custom and pattern, prior to and after the time of the use of excessive force upon ERIC BRICENO, and the abuse and false arrests of BLANCA BRICENO and JUAN BRICENO as alleged herein for deputies of LASD, including, but not limited to Does 1-10, to use excessive force, use unreasonable police tactics which lead to the unnecessary and unreasonable use of excessive force, and to use unreasonable, out-of-policy or unconstitutional police tactics including false arrests and imprisonments to investigate police use of force incidents.

49.   Defendant, VILLANUEVA and supervisors Does 1-10 knew, or in the exercise of reasonable care, should have known that LASD employees were responsible for a higher number of deaths during arrests in comparison to other county departments in California in recent years. According to Campaign Zero-Police Scorecard, California, Los Angeles County Sheriff's Department (see https://policescorecard.org/?sheriff=los-angeles) from 2016 to 2018 rated the fifty-seventh worse Sheriff's Department out of 58 California counties based upon multiple factors:

- **142 deadly force incidents:** Based on population, a Black person was 4.5 times as likely and a Latinx person was 2.4 times as likely to have deadly force used on them than a White person in Los Angeles from 2016-18.
- **2,734 civilian complaints of police misconduct:** only one in every 80 complaints were ruled in favor of civilians from 2016-18.
- **Deadly Force:** 77 Shootings and 65 other deaths or serious injuries, 142 total, which works out to almost 14 out of every 10,000 arrests. The LASD used More Deadly Force per Arrest than 86% of Departments.
- **Police Shootings Where Police Did Not Attempt Non-Lethal Force**

**Before Shooting:** 81% of Shootings (62/77).

- **Where Police say they saw a gun, but no gun was found:** 34% of guns "perceived" were never found (14/41).
- **125 People Killed or Seriously Injured:** 40 Deaths, 85 Serious Injuries; 48% were Unarmed; and only 22% had a gun.
- **Police Violence by race:** Although Latinx make up 51% of the City Population of Los Angeles, they account for 63% of the people killed or seriously injured.   LASD was found to be the County Sheriff Department accounting for the most racial bias and deadly force than 100% of all the other California Sheriff Departments.

50.   Plaintiffs are informed and believe and thereon allege that prior to the deputies killing ERIC BRICENO, Defendants VILLANUEVA and supervisor Does 1-10 knew or should have known Deputies Does 1-10 had previously used excessive force, used unreasonable police tactics which led to the unnecessary and unreasonable use of excessive force, and used unreasonable, out-of-policy or unconstitutional police tactics, including false arrests and imprisonments, to investigate police use of force incidents.

51.   Plaintiffs are informed and believe and thereon allege that Defendants, VILLANUEVA and supervisor Does 1-10 knew or should have known that other LASD deputies, including but not limited to Defendants Does 1-10 were the subject of prior complaints of allegations of similar conduct and had been Defendants in federal and state court actions alleged to have violated constitutional rights in the course and scope and under color of law of their capacities as LASD deputies.

52.   The Office of the Inspector General of the County of Los Angeles (OIG) has recently released a report analyzing the criminal investigation conducted under the direction of the Sheriff, Office of the Inspector General, County of Los Angeles, *Analysis of The Criminal Investigation of Alleged Assault By Banditos*, October, 2020, describing the history of deputy gangs at Page 3 as follows: "Deputy secret societies have existed since at least 1970, which was first noted by a report by Special Counsel James G. Kolts in 1992. The 2012 report by the Citizens

Commission on Jail Violence (CCJV) noted, "For years management has known about and condoned deputy cliques and their destructive subcultures that have undermined the core values articulated by the Sheriff. These factors have contributed to force problems in the jails, as well as a numerous off-duty force incidents involving deputies."

53. CCJV Recommendation 5.8 found that the Department should discourage membership and participation in identifiable cliques or subgroups. The CCJV found that "high level Department leaders should actively discourage membership in deputy cliques and avoid promoting or condoning a culture of allegiance to a sub-part of the Department."

54. The OIG's 2018 report on reform and oversight efforts encourage the LASD to implement CCJV recommendation 5.8: "the Department should discourage participation in destructive cliques." Office of the Inspector General, County of Los Angeles, *2018 Quarterly Report on Reform and Oversight Efforts*, at 20. The report pointed out that the Department failed to follow through with Department-wide appropriate corrective action to implement a policy prohibiting membership in organizations which advocate violation of laws, policy, and civil rights or which conceal their nature and membership.

> The absence of such a policy is a failure of leadership that must be corrected. For 50 years secret societies have been allowed to operate because of a centralized organized code of silence in the Department. A current example of the centrally implemented code of silence is the management's response to allegations of misconduct surrounding a secret society. Under the previous administration, deputies who did not wish to provide information against their fellow deputies in criminal investigations as required by Department policy we're not compelled to do so. There are currently multiple internal investigations related to secret societies. This office believes that the number of deputies who have been asked to date about membership in these groups or their nature is zero." *Id.,* at 20.

55. Two years later in the October 2020 subsequent investigation on the "Banditos" the Inspector General found: "Yet, as evidenced by the investigation, which is the

subject of this report, Sheriff Villanueva continues to promote a Code of Silence regarding these subgroups." *Ibid.*, at 1.

56. Plaintiffs are informed and believed that Defendants in this action, Does 1-10, are members of the Banditos. Deputies who participated in the acts and omissions that resulted in the death of ERIC BRICENO are assigned to the East Los Angeles station where a number of veteran older deputies are members of the "Banditos" or have ties to them which are described as "a secret society of deputies at East L.A. station". *Id.*, at 1. The report found that "[s]ome younger deputies at East LA alleged that the secret group identified as the Banditos used their influence, and sometimes force and violence, to push deputies out of the station for failing to live up to the Banditos' work ethic." Deputies testified that they were assaulted by Banditos members after an East Los Angeles station party at Kennedy Hall. The report concludes "Yet the Sheriff's Department's criminal investigation of the Kennedy Hall incident maintained the Code of Silence which has protected deputy secret societies for decades". *Id.*

57. Notwithstanding this information and history of LASD leadership, including but not limited to Defendants Does 1-10, VILLANUEVA, and his supervisors failed to train, supervise or discipline the LASD deputies that used excessive force, used unreasonable police tactics which lead to the unnecessary and unreasonable use of excessive force, used unreasonable, out-of-policy or unconstitutional police tactics to investigate police use of force incidents, or the LASD deputies who were the subject of prior complaints of allegations of similar conduct and those who had been the subject of allegations in federal and state courts to have violated constitutional rights of others in the course and scope and under color of law of their capacities as LASD deputies.

58. In August 2019, in a section entitled "The Department has Declined to Make Available to the Office of the Inspector General Performance Recording and Monitoring System Records Regarding Secret Investigations," the IG essentially

lamented that LASD had stopped providing periodically required reports of discipline and misconduct of deputies on a reporting system, the Performance Recording and Monitoring System.   The IG reported that the failure of the Sheriff to comply with the protocols for reporting disciplinary files "precluded monitoring of particularly sensitive cases, including the type that resulted in Sheriff Baca and Undersheriff Tanaka being convicted in federal court." Office of the Inspector General, County of Los Angeles, *Los Angeles County Sheriff's Department Compliance with Transparency Law*, August, 2019, at 3-4.

59.  The Inspector General explained that without access to case files, he could not comply with his duties to ascertain or confidently report accurate information regarding the department's handling of discipline cases.   In that regard the IG noted:

> In the past, such secrecy has given us jail abuse, secret societies, some of which have engaged in violent acts and stratified themselves based on race and gender, and misconduct at the highest levels of the Department, resulted in federal prosecutions and convictions. It is not possible to conclude the current administration's increase in secrecy is not repeating these mistakes. *Id.*

60.  This report also noted the failure to comply with the laws designed to overcome secrecy in government that is mirrored in LASD's systematic refusal to comply with the California Public Records Act requests in a timely manner. The report stated, "While the Sheriff has a large number of staff members assigned to the Sheriff's Information Bureau, he claims to be unable to comply with the modifications to Penal Code section 832.7 which permits the public access to records regarding shootings, use of force, and findings of dishonesty."   The IG concludes: "numerous public requests to LASD are currently going completely unanswered. *Id.*, at 1.   Plaintiffs' request (see ¶ 8 above) is one example.

61.  Los Angeles County has paid out approximately $55,000,000 in settlements in cases in which Sheriff deputies have been alleged to belong to a secret society. The

report, prepared by Los Angeles County attorneys listed approximately 60 cases, some of them still pending, and named eight specific cliques. The high cost paid out underscores how these deputy groups, with such monikers as "The Vikings," "The Regulators," "3000 Boys," along with "The Banditos," have operated out of several sheriff's sub-stations and jails for decades, exhibiting what critics have long alleged are the violent, intimidating tactics similar in some ways to criminal street gangs. Alene Tchekmedyian, *Deputies accused of being in secret societies cost L.A. County taxpayers $55 million, records show*, Aug. 4, 2020, L.A. Times, https://www.latimes.com/california/story/2020-08-04/sheriff-deputy-clique-payouts.

62. Plaintiffs are informed and believe and thereupon allege that the LASD records indicate that it now has a list prepared by the District Attorney's Office of approximately 300 deputies with history of dishonesty and misconduct. The LASD's roster of deputies, known as a "*Brady* list," was compiled in 2014 under prior Sheriffs, to keep track of officers with histories of misconduct that might affect their credibility in court. M. Lau, B. Poston & C. Knoll, *Inside a secret 2014 list of hundreds of L.A. deputies with histories of misconduct*, L.A. Times, Dec. 8, 2017,

http://www.latimes.com/local/la-me-sheriff-brady-list-20171208-htmlstory.html.

63. Plaintiffs are informed and believe and thereupon allege that some of the Doe Defendants in this action are some of the approximately 300 deputies with history of dishonesty and misconduct on the Brady list.

64. VILLANUEVA and supervisor Does 1-10 disregarded this information and failed to adequately investigate and discover this pattern, custom or practice of unconstitutional violations, or the existence of facts which creates the potential of unconstitutional acts, and thereby violated their duty to supervise, train and instruct their subordinates to prevent similar acts to other persons. As a result Decedent and Plaintiffs were harmed in the manner threatened by the custom, pattern or practice.

65. VILLANUEVA's and supervisor Does 1-10, custom, practice and policy resulted in their failures to take steps to properly train, supervise, investigate or instruct Defendants Does 1-10 use of excessive force. This was a moving force in the use of excessive force upon Decedent and the abuse and false arrests and imprisonments of Plaintiffs and for the damages and injuries as alleged above.

## FOURTH CLAIM
### Violation of 42 U.S.C. § 1983 for Custom, Policy or Practice
### Causing Constitutional Violations
### (Against COUNTY and LASD)

66. Plaintiffs restate and reiterate all paragraphs of this Complaint as though fully set forth herein.

67. At all times herein mentioned, Defendants COUNTY and LASD, and each of them, maintained a de facto unconstitutional informal custom, practice or pattern of permitting, ignoring, enabling and condoning VILLANUEVA and Does 1-10 to engage in misconduct:

    a. Encouraging, accommodating, enabling, or facilitating shootings of unarmed citizens; the use of excessive and unreasonable force, including deadly force and other misconduct;

    b. Encouraging, accommodating, enabling, or facilitating a code of silence among LASD deputies and supervisors, including Defendant and Doe Defendants 1-10 herein, pursuant to which false reports were generated and acts of excessive and unreasonable force were covered up;

    c. Employing and retaining LASD deputies and other personnel including Doe Defendants 1-10 herein, whom at all times relevant hereto they knew or reasonably could have known had dangerous propensities for abusing their authority and mistreating citizens by failing to follow written LASD policies, including but not limited to responding to calls for service including a mentally ill peron;

    d. Providing inadequate supervision, training, control, reprimand, retention, assigning and discipline of LASD deputies, including Doe Defendants herein,

whom LASD and COUNTY knew or should have known had the aforementioned propensities and character traits;

e. Ratifying the intentional misconduct of LASD deputies, including Does 1-10 herein;

f. Maintaining grossly inadequate procedures for reporting, supervising, reviewing, disciplining and controlling and/or abating misconduct by LASD officers, including Does 1-10 herein;

g. Maintaining unconstitutional policies and procedures that allow, facilitate and enable investigations of deadly force in a manner inconsistent with accepted criminal investigations that promote and encourage, ratify or condone cover ups of excessive force and officer misconduct;

h. Maintaining and having unconstitutional customs, policies and/or procedures of covering up unlawful uses of force by LASD deputies, including bullying, threatening, falsely arresting, intimidating witnesses and confiscating, mishandling, manipulating and destroying evidence;

68. These policies, customs or practices implemented, maintained and tolerated by Defendant COUNTY and LASD were affirmatively linked to and were a significant influential force resulting in damages of pain and suffering and death to Decedent, and injuries to Plaintiffs as set forth above.

69. Accordingly, Defendant COUNTY and LASD are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983 and attorney fees and costs.

## <u>FIFTH CLAIM</u>

**Violation of Title II of the Americans with Disabilities Act**
**(42 U.S.C. § 12131 et seq., against COUNTY and LASD)**

70. Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

71. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be "serious and pervasive social problem." 42

U.S.C. § 12101(a)(2).

72.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."   42 U.S.C. § 12101(b)(l) (2).

73.  Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74.  The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.160, require public entities to:

a.  Take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others;

b.  Furnish appropriate auxiliary aids and services (including qualified sign language interpreters) where necessary to afford an individual with a disability an equal opportunity to enjoy the benefits of a service, program, or activity conducted by the public entity; and

c.  In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with a disability.

75.  At all times relevant to this action, Defendants were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

76.  At all times relevant to this action, Decedent was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

77.  Through the acts and omissions of Defendants and their agents and employees

described herein, Defendants subjected Decedent to discrimination on the basis of disability in violation of Title II of the ADA by failing to accommodate his mental and emotional disabilities during the course of law enforcement interactions.

78. Plaintiffs as Decedent's representatives are entitled to judgment, damages and attorneys' fees and costs as alleged herein.

## SIXTH CLAIM
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. § 794; against Defendants COUNTY and LASD)

79. Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

80. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

81. Decedent was at all times relevant herein a qualified individual with disabilities within the meaning of the Rehabilitation Act because he had physical impairments that substantially limit one or more of his major life activities.   See 29 U.S.C. § 705(20)(B).

82. At all times relevant to this action Defendants were recipients of federal funding within the meaning of the Rehabilitation Act.

83. Through their acts and omissions described herein, Defendants have violated the Rehabilitation Act by excluding Decedent from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services Defendants provide to the general public.

84. Plaintiffs as Decedent's representatives are entitled to judgment, damages and attorneys' fees and costs as alleged herein.

## SEVENTH CLAIM
### Cal. Const., Art. 1, § 7; Cal. Civil Code §§ 51, 51.7, 52, 52.1, 54, 54.1
### and 54.3; and Cal. Gov't Code § 11135.

**(Against COUNTY, LASD and Does 1 - 10)**

85.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

86.   The conduct of Defendants in entering the Briceno residence without a warrant after being told not to do so, the use of excessive force upon ERIC BRICENO, the false arrest and detention of BLANCA L. BRICENO and JUAN MANUEL BRICENO and the excessive warrantless search of the Briceno home constitutes unjustified seizures under the California Constitution Article 1, Section 13 and was the cause of the harm and damages of the Plaintiffs as alleged herein.

87.   By their acts, omissions, customs, and policies, defendants Does 1-10 acting in concert, as described above with threat, intimidation, and/or coercion, violated Plaintiffs and Decedents rights Cal. Const., Art. 1, § 7; Cal. Civil Code §§ 51, 51.7, 52, 52.1, 54, 54.1 and 54.3; and Cal. Gov't Code § 11135; and the following clearly established rights under the United States Constitution and California constitution and state law:

a.   Decedent ERIC BRICENO's right to be free from an unreasonable ongoing seizure, brutal assaults by Defendants Does 1-10, resulting in serious bodily injury and death as secured by the Fourth and Fourteenth Amendments to the United States Constitution, California Constitution Article 1, §§ 7 and 13;

b.   Decedent's right to immediate medical care as required by California Government Code section 845.6;

c.   Plaintiffs BLANCA BRICENO and JUAN BRICENO, rights to be free from warrantless entry of their home, physical abuse and injury, false arrest and detention and the excessive warrantless search of the Briceno home as secured by the Fourth and Fourteenth Amendments to the United States Constitution, California Constitution Article 1, §§ 7 and 13;

d.   All Plaintiffs' rights to be free from wrongful governmental interference with family relationships and Plaintiffs' rights to companionship, society, and support of each other as secured by the First and Fourteenth Amendments;

88. Defendants' violations of Plaintiffs and Decedents due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.

89. The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity.

90. Further, all of Defendants' violations and duties and rights and coercive conduct described herein were volitional acts--none were accidental or merely negligent. Further, each Defendant violated Plaintiffs' or Decedent's rights with specific intent and purpose to deprive them of their enjoyment of those rights and the interests protected by those rights.

91. To the extent this claim is based upon a violation of the Decedent's rights, it is asserted as a survival action. To the extent that the violations of the rights were perpetrated on and suffered by the Plaintiffs BLANCA BRICENO and JUAN BRICENO, they are asserted as a personal claim; and, to the extent the violations were perpetrated on both Plaintiffs and Decedents, they are asserted as to all Plaintiffs.

92. Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of… disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."   Cal. Gov't Code § 11135(a).

93. A violation of Title II of the ADA is a violation of Cal. Gov't Code § 11135(b).

94. At all times relevant to this action, Defendants received financial assistance from the State of California.

95. Defendants' acts and omissions, as described herein, have excluded and/or denied Decedent the benefit of and/or participation in the programs, services and activities they offer to the general public, thereby violating Decedent's rights under Cal. Gov. Code § 11135.

96. Defendant COUNTY is vicariously liable for the injuries and losses of Decedent and Plaintiffs for the conduct of its employees pursuant to Government Code

§ 815.2.

97. As a direct and proximate result of Defendants' violations of the California Civil Code and Government Code sections cited above, and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and state law, Decedent and Plaintiffs sustained injuries and damages, and against each defendant named in this count is entitled to the relief set forth above and punitive damages against all individual defendants, including all damages and penalties, three times actual damages and attorneys' fees and costs as allowed by Civil Code section 52 and 52.1 and California law.

### EIGHTH CLAIM
**Assault and Battery**
**(Against Defendants COUNTY, LASD and Does 1-10)**

98. Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

99. On or about March 16, 2020, and at all times mentioned herein, ERIC BRICENO and Plaintiffs BLANCA BRICENO and JUAN BRICENO were subjected to a battery (and wrongful death of ERIC BRICENO) by Does 1-10 acting within the scope and course of their employment with LASD and COUNTY.

100. Decedent and Plaintiffs did not consent to the uses of force to which they were subjected.   As a legal result of the aforesaid conduct of Doe Defendants, and each of them, Plaintiffs were harmed, injured and suffered pain and suffering and Decedent ERIC BRICENO ultimately died from his injuries.

101. All Plaintiffs have suffered special and general damages as set forth above and incorporated herein by reference.

102. Plaintiffs allege that the assault and battery was done with oppression and justifies the imposition of punitive and exemplary damages according to California law against Does 1-10.

103. COUNTY and LASD are vicariously liable for the wrongful acts of Does 1-10, pursuant to § 815.2(a) of the California Government Code, which provides that a

public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him/her to liability.

## NINTH CLAIM
### False Arrest and False Imprisonment.
### (Against Defendants COUNTY, LASD and Does 1 - 10)

104. Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

105. Does 1-10, acting in the course and scope of their duties, intentionally deprived ERIC BRICENO, as well as Plaintiffs BLANCA BRICENO and JUAN BRICENO of their freedom of movement by use of force, threats of force, menace, deceit and unreasonable duress, to which Decedent and Plaintiffs did not consent.

106. The conduct of Does 1-10 was a substantial factor in causing the harm suffered by Decedent and Plaintiffs.

107. COUNTY and LASD are vicariously liable for the wrongful acts of Does 1-10, pursuant to § 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him/her to liability.

108. Decedent and Plaintiffs suffered harm and seek special and general damages for the harm they suffered as set forth above and incorporated herein.

109. Plaintiffs allege that the false arrest and detention by Does 1 to 10 was done with oppression and justifies the imposition of punitive and exemplary damages according to California law.

## TENTH CLAIM
### Negligence
### (Against All Defendants and Doe Defendants)

110. Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein (excluding punitive damages).

111. At all times mentioned herein, Defendants and each of them, and Does 1-10, had a duty to Plaintiffs to comply with the minimal LASD training mandated for use of force training; to not utilize careless or reckless police tactics that could create a

dangerous circumstance or heighten a situation of danger that could result in the use of unnecessary force; to comply with the minimal LASD training mandated for tactical use of force training; to cause the discharge his/her Taser unless it was justified under the totality of the circumstances; to respond appropriately to persons they know or believe are mentally ill, and believe are a possible suspect of a minor non-violent offence without choosing to use deadly force before determining if the plaintiff posed an immediate threat to the safety of the officers or to others.

112. The actions and inactions of Defendants and Does 1-10 inclusive, were negligent and reckless, including but not limited to:

    a. Encouraging, accommodating, or facilitating excessive use of force of unarmed citizens; the use of excessive and unreasonable force, including deadly force and other misconduct;

    b. Encouraging, accommodating, or facilitating a "code of silence" among LASD deputies and supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up and justified.

    c. Encouraging, accommodating, or facilitating a deputy huddling policy or practice after an incident;

    d. Employing and retaining as deputies and personnel, individuals such as Defendant deputies Does 1-10 herein, who LASD, COUNTY, VILLANUEVA and other supervisors at all material times herein knew or reasonably should have known had dangerous propensities for abusing their authority and/or for mistreating citizens;

    e. Inadequate supervising, training, controlling, assigning and disciplining LASD deputies, Does 1-10 who Defendants knew or reasonably should have known had the aforesaid propensities and character traits;

    f. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by LASD deputies including defendants herein;

**BRICENO COMPLAINT FOR DAMAGES**

g. By ratifying the intentional misconduct of LASD deputies including Defendants and Doe Defendants herein;

h. The failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against Decedent ERIC BRICENO;

i. The failure to properly and adequately assess the need to detain, arrest, and use force against BLANCA and JUAN BRICENO, and,

j. The negligent handling of evidence and witnesses.

113. Defendants VILLANUEVA, LASD and other Supervisor Doe Defendants, acting within the course and scope of their employment with Defendants, had a duty to assure the competence of Defendants and Doe Defendants herein.   These supervisor Defendants failed to exercise ordinary care under the circumstances herein.   They failed to evaluate and to assure the competence of Doe Defendants and breached their duty of selecting, training, reviewing and periodically evaluating the competency of these Doe Defendants.   This breach of duty of careful selection, training, review and periodic evaluation of the competency of such Doe Deputies and Supervisors created an unreasonable and unnecessary risk of harm to persons such as the Plaintiffs.

114. As a legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants and Doe Defendants, and each of them, Decedent ERIC BRICENO suffered severe pain and emotional anguish and was killed.   Plaintiffs BLANCA BRICENO and JUAN BRICENO, as well as the ESTATE OF ERIC BRICENO, have suffered the wrongful death damages as alleged herein, including but not limited to general damages including loss of love, care, protection, assistance, comfort, companionship, society, affection, solace and moral support, according to proof; special damages funeral and burial expenses, and other losses according to proof.

115. All Plaintiffs ask for prejudgment interest; for costs of suit incurred herein; and for such other and further relief as the court may deem just and proper.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants and each of

them, VILLANUEVA and Doe Defendants 1-10 jointly and severally, as described in the Claims set forth above, as follows:

    a.  For general and special damages, including survival damages and wrongful death damages under federal and state law, according to proof;

    b.  For punitive damages against individual Defendants and Doe Defendants in an amount to be determined at trial;

    c.  For interest as allowed by law;

    d.  For costs of suit and reasonable attorney's fees and costs pursuant to 42 USC, Sections 1988, pursuant to and as permitted by law;

    e.  For costs of suit and reasonable attorney's fees and costs and treble damages pursuant Cal. Civ. Code §§51 and 52.1; and,

    f.  For such further relief, including injunctive and/or declaratory relief as the Court deems just and equitable.

Dated: February 15, 2021

                  **LAW OFFICES OF R. SAMUEL PAZ**
                  **THE LAW OFFICES OF JOHN BURTON**

                      /s/ R. Samuel Paz
                  By:  _____
                  R. Samuel Paz, Counsel for Plaintiff JUAN MANUEL BRICENO

Dated: February 15, 2021

                  **SONIA MERCADO & ASSOCIATES**

                      /s/ Sonia M. Mercado
                  By:
                  Sonia M. Mercado, Counsel for Plaintiffs ESTATE OF ERIC ESTEBAN BRICENO, Deceased, through his successor in interest Blanca Luisa Briceno and BLANCA LUISA BRICENO Individually.

## DEMAND FOR JURY TRIAL

All Plaintiffs hereby demand a trial by jury through their counsel of record.

Dated: February 15, 2021
**LAW OFFICES OF R. SAMUEL PAZ**
**THE LAW OFFICES OF JOHN BURTON**

/s/ R. Samuel Paz

By: _____
R. Samuel Paz, Counsel for Plaintiff JUAN MANUEL
BRICENO

Dated: February 15, 2021
**SONIA MERCADO & ASSOCIATES**

/s/ Sonia M. Mercado

By: _____
Sonia M. Mercado, Counsel for Plaintiffs ESTATE OF ERIC
ESTEBAN BRICENO, Deceased, through his successor in
interest Blanca Luisa Briceno and BLANCA LUISA
BRICENO Individually.